# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| 70TH COURT CONDO ASSOCIATION, <br><br> Plaintiff, <br><br> v. <br><br> OHIO SECURITY INSURANCE COMPANY, and DONAN ENGINEERING CO., INC., <br><br> Defendants. | No. 16 CV 07723 <br><br> Judge Manish S. Shah |

## MEMORANDUM OPINION AND ORDER

Plaintiff 70th Court Condo Association had an insurance policy with defendant Ohio Security Insurance Company for a building the Condo Association owned in Orland Park, Illinois. Severe wind and hail storms significantly damaged the building, which prompted the Condo Association to file an insurance claim with Ohio Security. After an appraisal determined the value of the damage to the building, Ohio Security paid the Condo Association per the insurance policy. The Condo Association claims the appraisal was rigged and not binding, but Ohio Security has refused to reopen the claim or to pay additional funds to the Condo Association. As a result, the Condo Association brings this action against Ohio Security for breach of contract and for statutory damages under Section 155 of the Illinois Insurance Code. 215 ILCS 5/155 (2004). Ohio Security moves to dismiss those two claims. For the following reasons, Ohio Security's motion is granted in part and denied in part.

I.      **Legal Standards**

A complaint may be dismissed if it fails to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6); *see Avila v. CitiMortgage, Inc.*, 801 F.3d 777, 781 (7th Cir. 2015). Federal notice pleading standards require a complaint to "state a claim to relief that is plausible on its face." *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 885 (7th Cir. 2012) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Courts are confined to the pleadings, but they may also consider documents attached to a motion to dismiss if those documents are referred to in the complaint and are central to the plaintiff's claim.[1] *Yassan v. J.P. Morgan Chase & Co.*, 708 F.3d 963, 975 (7th Cir. 2013) (quoting *Wright v. Associated Ins. Companies, Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994)). In reviewing the pleadings and any related documents, courts must construe all factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011). Legal conclusions and conclusory allegations do not receive that same treatment. *Virnich*, 664 F.3d at 212.

Subject-matter jurisdiction exists because there is complete diversity between the parties—the Condo Association's members are citizens of Illinois, Ohio Security

---

[1] The complaint refers to "an appraisal," [1-3] ¶ 26, and to the insurance policy, which was also attached to the original complaint. [1-3] ¶ 4. Details surrounding the appraisal and the insurance policy's appraisal clause are central to both the breach of contract claim and to the statutory claim under § 155 of the Illinois Insurance Code. Accordingly, the following documents that Ohio Security attached to its motion to dismiss will be considered: correspondence confirming the Condo Association's request for an appraisal; the appraisal award; correspondence confirming that Ohio Security sent the Condo Association payment owed per the appraisal award; and the insurance policy, including the appraisal clause. The Condo Association does not object to the court's consideration of these documents.

2

is a citizen of New Hampshire and Massachusetts, Donan Engineering is a citizen of Indiana and Kentucky—and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332. The parties agree that Illinois law applies to their dispute. Given that the alleged injury occurred in Illinois and that the Condo Association filed a claim under the Illinois Insurance Code, Illinois law will control.

## II. Background

Severe wind and hail storms damaged the Condo Association's building on May 20, 2014. [1-3] ¶ 8.[2] The building was a "single story, steel framed structure over a concrete slab on grade," [1-3] ¶ 6; its exterior walls were covered with concrete masonry units and the roof was "clad with a modified bitumen roof membrane." [1-3] ¶ 7. The Condo Association filed a claim for damage in excess of $50,000 with Ohio Security, with which the Condo Association had an active insurance policy. [1-3] ¶¶ 4–5.

The Condo Association's insurance policy included an appraisal clause:

> If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:
>     a.    Pay its chosen appraiser; and
>     b.    Bear the other expenses of the appraisal and umpire equally.

---

[2] Bracketed numbers refer to entries on the district court docket.

3

> If there is an appraisal, we will still retain our right to deny the claim.

[11-1] at 136. Pursuant to this policy, the parties participated in an appraisal. [11-1] at 8–9, 11. Ohio Security retained Donan Engineering as its appraiser to determine the cause of damage to the building. [1-3] ¶ 10. Donan Engineering observed dents in the furnace flue caps as well as on doors and downspouts; six fresh fractures on the building's roof; and cracked skylights. [1-3] ¶¶ 13–15. Donan Engineering did not take any core samples from the roof and only relied on its observations to conclude that wind did not damage the roof and that "[l]ong-term, ongoing age-related deterioration [was] the primary distress to the building's roof." [1-3] ¶¶ 12, 16–17.

The appraisal award listed a "Replacement Cost" of $14,065.16 and an "Actual Cash Value" of $10,648.48. [11-1] at 11. On October 13, 2015, Ohio Security sent the Condo Association a check for the "Actual Cash Value," less the amount Ohio Security had previously paid the Condo Association. [11-1] at 13.[3] More than six months later, the Condo Association engaged a licensed public adjusting company to perform an investigation of the building's damage. [1-3] ¶¶ 18–19. This company took core samples from the roof and concluded that hail caused extensive damage to the roof. [1-3] ¶¶ 20–21. Next, this company contacted Ohio Security to share its video and photographic evidence of additional property damage to the building as cause for reopening the Condo Association's claim. [1-3] ¶¶ 21–23. Ohio

---

[3] The Condo Association agrees in its response that "Ohio Security issued payment to it for the actual cash value of the appraisal less the Policy deductible and prior payments." [19] at 2.

4

Security declined the company's offer to review the evidence because the Condo Association's claim was closed. [1-3] ¶ 23. Ohio Security also declined to reopen the Condo Association's claim because an appraisal had already been performed. [1-3] ¶ 26. One month later, another company conducted core sampling and observed hail damage that "Donan Engineering failed to observe." [1-3] ¶ 28.

With respect to Count One, the Condo Association alleges that Ohio Security's refusal to pay the Condo Association for the property damage constitutes a breach of the insurance policy. [1-3] ¶ 32. As for Count Two, the Condo Association alleges that Ohio Security engaged in improper claims practice by misrepresenting facts or policy provisions; failing to promptly acknowledge pertinent communications; not attempting to promptly settle the Condo Association's claim in a fair and equitable manner; offering the Condo Association substantially less than the amounts ultimately due; refusing to conduct a reasonable investigation on all available information; attempting to settle the claim for less than what a reasonable person would believe the Condo Association is entitled to; and failing to provide a reasonable and accurate explanation of the basis for its refusal to reopen the claim. [1-3] ¶ 44. Additionally, the Condo Association alleges that Ohio Security's failure to adequately explain its refusal to pay the loss or to reopen the claim was unreasonable and vexatious, in bad faith, and lacking in fair dealing. [1-3] ¶¶ 39–42, 46.[4]

---

[4] Count Three is a negligence claim brought against Donan Engineering and is not at issue in the pending motion.

5

### III. Analysis

#### A. Two-Year Time Limitation on Bringing Legal Action

The insurance policy provides that any legal action against Ohio Security must be brought within two years after the date the damage occurred. [11-1] at 151. Ohio Security argues that Counts One and Two are barred by this time limitation clause and should be dismissed because the Condo Association brought this legal action more than two years after its building sustained damage from the wind and hail storms. [11] at 4–5.

Courts are discouraged from granting Rule 12(b)(6) motions on affirmative defenses, such as the running of a statute of limitation or a policy's time limitation. *See United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005). The reason for this is twofold: first, Rule 12(b)(6) is only intended to test whether the complaint states a claim for relief, which it can do even in the face of a potential affirmative defense; and second, affirmative defenses often depend on facts that are not before the court at the preliminary stages of the litigation. *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012). The preferred vehicle for affirmative defenses is a motion for judgment on the pleadings under Rule 12(c). *Id.* If, however, the relevant dates appear in the complaint unambiguously, a court may grant a motion to dismiss based on a statute of limitation or the like. *Brooks v. Ross*, 578 F.3d 574, 579 (7th Cir. 2009).

Here, both the date the damage occurred and the date the complaint was filed appear on the face of the complaint, [1-3] ¶ 5, and the insurance policy

6

containing the two-year time limitation was attached to the original complaint. [1-3]

¶ 4. The Condo Association brought this action more than two years after the damage occurred, but it argues that § 143.1 of the Illinois Insurance Code tolled the two-year time limitation, *see* 215 ILCS 5/143.1 (1994), and that Ohio Security either waived its reliance on the time limitation or should be estopped from relying on the time limitation because it misled the Condo Association about whether it would assert the time limitation and it did not notify the Condo Association of when the deadline would run. [19] at 6, 8–9.

In its reply, Ohio Security notes that § 143.1 tolls the effect of time limiting provisions from the date the insured files a proof of loss, "in whatever form is required by the policy," until the date the insurer denies the claim. [20] at 6 (quoting 215 ILCS 5/143.1). Ohio Security asserts that § 143.1 does not apply in this case because their policy does not require a proof of loss, the Condo Association did not file one here, and Ohio Security never denied the Condo Association's claim.[5] [20] at 7. In other words, the insurance company argues that there is no start or end date between which tolling could operate here.

Ohio Security also disputes that it did anything to mislead the Condo Association to believe the insurance company waived the time limitation. [20] at 7–8. Finally, Ohio Security asserts that § 919.80(d)(8)(C) of the Illinois Administrative

---

[5] The policy requires insurers to: "Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms." [11-1] at 136. Ohio Security interprets this to mean that it can determine, on a claim-by-claim basis, whether proof of loss is necessary and if so, it can then send a request for it along with specific forms for the insured to submit. Section 143.1 would only apply in cases where Ohio Security required proof of loss, sent the specific forms, and denied the claim—so their argument goes.

7

Code controls when an insurance company has a duty to notify the insured of any statute of limitation, and this duty is only triggered when tolling under § 143.1 has occurred. [20] at 9 (citing 50 Ill. Adm.Code § 919.80(d)(8)(C) (2002)). Since Ohio Security contends that § 143.1 tolling is inapplicable here, it also argues that § 919.80(d)(8)(C) was not triggered and therefore, it was under no duty to remind the Condo Association of the policy's time limitation or to notify the Condo Association that the deadline would soon expire. *Id.*

There are no allegations in the complaint about whether a proof of loss was requested or submitted, or whether the parties communicated about the two-year time limitation; therefore, it is unclear whether tolling or waiver would be appropriate here. Resolving Ohio Security's affirmative defense that the Condo Association's lawsuit is time barred turns on conclusions about the applicability of tolling and waiver, which depend on facts that are not before the court. Granting Ohio Security's motion to dismiss Counts One and Two on this basis would be premature. The motion is denied to the extent it is based on the argument that the claims are time barred.

B. **Breach of Contract**

Ohio Security moves to dismiss Count One for failure to plead the essential element of damages. A breach of contract claim has six required elements: (1) offer and acceptance, (2) consideration, (3) definite and certain terms, (4) performance by the plaintiff of all required conditions, (5) breach, and (6) damages. *Vill. of S. Elgin v. Waste Mgmt. of Illinois, Inc.*, 348 Ill.App.3d 929, 940 (2004). Ohio Security argues

8

that the appraisal award was binding and that because it paid the Condo Association the amount the appraisal determined was owed, the Condo Association has no damages. [11] at 3.

"In the insurance context, appraisal is most often used to determine the amount of the loss sustained under a property insurance policy." *FTI Int'l, Inc. v. Cincinnati Ins. Co.*, 339 Ill.App.3d 258, 260–61 (2003) (quoting 15 Couch on Insurance 3d § 209:4 (1999)). Appraisal is far more limited than arbitration, which is quasi-judicial and can resolve a dispute in its entirety. *Id.* An appraisal does not require a hearing or any judicial discretion; in fact, appraisers are generally expected to act on their own skill and knowledge. *Id.* Despite these important differences, Illinois courts view appraisal clauses as analogous to arbitration clauses and hold that both types of clauses are valid and enforceable in a court of law. *Lundy v. Farmers Grp., Inc.*, 322 Ill.App.3d 214, 218–19 (2001) (quoting *Beard v. Mount Carroll Mut. Fire Ins. Co.*, 203 Ill.App.3d 724, 727 (1990)).

Enforcement of arbitrations and appraisals, though, gives rise to the same concern over an individual's right to seek redress in court. *DeGroot v. Farmers Mut. Hail Ins. Co. of Iowa*, 267 Ill.App.3d 723, 725 (1994). In light of this important right, Illinois courts only compel compliance with or order enforcement of an appraisal when the language of the appraisal clause is clear and unambiguous, and when it is obvious that the disputed issue falls within the scope of the clause. *Travis v. Am. Mfrs. Mut. Ins. Co.*, 335 Ill.App.3d 1171, 1175–76 (2002). For example, an arbitration clause stating that the parties "undertake to give effect to the arbitral

award as if it were a court decision" meets the standard. *Geneva Int'l Corp. v. Pilsner Urquell, No. 00 C 0152*, 2000 WL 1898573, *1–2 (N.D. Ill. Dec. 26, 2000) (applying Illinois law). On the other hand, an appraisal clause that explains the mechanics of how an umpire and the appraisers are selected and how they may reach an agreement, but that only states that an agreement signed by two of those three "will set the amount of loss," does not make evident to the parties that such a decision would be irrevocable. *DeGroot*, 267 Ill.App.3d at 725 ("the defendant could not require the plaintiff to accept the appraisers' decision as final without telling the plaintiff that the decision would be final"); *see also Stratford W. Homeowners Ass'n v. Country Mut. Ins. Co.*, 338 Ill.App.3d 288, 291 (2003) ("[n]othing in the insurance contract indicated that, by participating in the appraisal, Stratford was forfeiting its right to seek redress in court").

In passing, the Condo Association briefly asserts that the appraisal clause in the insurance policy did not clearly state that it would forfeit its right to sue by participating in the appraisal. [19] at 5. The relevant language in the appraisal clause reads: "A decision agreed to by any two will be binding." [11-1] at 136. This clause is less explicit than the clause in *Geneva*, which makes clear that the appraisal award has the same conclusive force as a court decision. Nevertheless, it sends the same message of finality because it uses the word "binding" in reference to the entire appraisal decision. This is unlike the language in *DeGroot*, which merely conveys that an amount will be set and leaves open the question of whether other issues related to the amount remain open for debate. By referring to the

10

appraisal decision as "binding," this appraisal clause made it sufficiently clear and unambiguous to the Condo Association that by participating in this process, it foreclosed its opportunity to litigate the amount Ohio Security owed it for damage to the building covered by the insurance policy.

Appraisals enjoy substantial deference under Illinois law. *Bailey v. Timpone*, 75 Ill.2d 539, 545 (1979). Absent misconduct, gross error, or fraud, an appraisal award should bind the parties. *Hetherington v. Cont'l Ins. Co. of N.Y.,* 311 Ill.App.577, 583 (1941). Appraisers have wide discretion to select which methods or procedures to use in deciding on an award. *Bd. of Educ. of City of Chicago v. Gorenstein,* 179 Ill.App.3d 388, 394 (1989); *Sebree v. Bd. of Educ.,* 254 Ill. 438, 446 (1912). For example, a court declined to set aside an appraisal award even though the court acknowledged that it was calculated without using a deduction that is an element of the relevant procedure, because the court reasoned that the theory behind *not* using the deduction "had logic," thus it was not "a gross mistake of law or fact" to omit it from the calculation. *Gen. Cas. Co. v. Tracer Indus., Inc.*, 285 Ill.App.3d 418, 424 (1996); *see also Hayes v. Ennis*, 278 Ill.App.3d 121, 127 (1996) ("Arbitration awards should be construed, wherever possible, to uphold their validity. [...] An award will not be set aside due to gross errors in judgment in law or gross mistakes of fact by the arbitrator unless the errors or mistakes are apparent on the face of the award").

The Condo Association contends that the appraisal process was "rigged." [19] at 4. Yet, it admits that the appraisal was *not* fraudulently rigged. *Id.* Effectively,

11

the Condo Association's argument is that because the appraisal award was based on a report by Ohio Security's appraiser and because the Condo Association disagrees with the methods that appraiser used to reach its conclusions in the report, the award must be flawed. Specifically, the Condo Association takes issue with the fact that Ohio Security's appraiser did not take a sample of the roof to determine the damage, as did the companies that the Condo Association later hired to reassess the damage. [1-3] ¶¶ 17, 20, 28. The Condo Association argues: "[the] report directly affected the ***amount*** of the Appraisal Award because the umpire and appraiser, both of whom voted in favor of the Appraisal Award, used an estimate that contained dollar amounts for roof repair instead of roof replacement or roof repair of a greater magnitude." [19] at 4 (emphasis original). According to the Condo Association, the award would have been "different and larger" if the report had been "competent." *Id*. It does not explain why taking a sample of the roof was a necessary step, or why failing to do so necessarily makes the report incompetent.

Given the wide discretion that appraisers have in choosing their methods of calculating awards, and the significant deference courts give to appraisal awards, the Condo Association's allegation that Ohio Security's appraiser did not use proper methods to evaluate the damage is insufficient. Appraisals are intended to work just as this one did—each appraiser selects a method, performs a calculation, and presents its conclusion to the umpire; whichever method and conclusion gets two votes of approval becomes binding on the parties. A party does not get a "do over" just because it disagrees with the method and conclusion that won two votes. Only

when it can be determined, from the face of the award, that the award is grossly mistaken in fact or law should an appraisal be set aside. That is not the case here. Furthermore, since the Condo Association admitted that there was no fraud in the appraisal and failed to allege any substantial misconduct or mistake in the appraisal, this appraisal award cannot be disturbed by a court.

In sum, because the appraisal clause was clear and unambiguous and because the appraisal award was neither fraudulent nor a product of gross error, it is binding on the Condo Association and Ohio Security. The Condo Association has no damages to allege with respect to its breach of contract claim (and Ohio Security did not breach its obligations when it paid a claim based on a binding appraisal). Ohio Security's motion to dismiss Count One is granted.

## IV. Conclusion

Ohio Security's motion to dismiss, [11], is granted in part and denied in part. The motion is denied as to the argument that Counts One and Two are time barred. The motion is granted as to the breach of contract claim. Count One is dismissed without prejudice to give the Condo Association an opportunity to amend the complaint to allege a plausible claim for breach of contract. Count Two is not dismissed.

ENTER:

                                                  Manish S. Shah
                                                  United States District Judge

Date: 11/07/2016